NOTICE
Decision filed 06/27/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 230473-U

NO. 5-23-0473

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| JEFFERY TODD HENSON SR., | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Macon County. |
| | ) | |
| v. | ) | No. 22-SC-512 |
| | ) | |
| MACON COUNTY JAIL, | ) | Honorable |
| | ) | Erick F. Hubbard, |
| Defendant-Appellee. | ) | Judge, presiding. |

_____

JUSTICE MOORE delivered the judgment of the court.
Presiding Justice McHaney and Justice Barberis concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The circuit court properly dismissed plaintiff's complaint as untimely where his tort claim against the defendant, a local governmental entity, was brought beyond the one-year limitations period applicable to such claims.

¶ 2    Plaintiff Jeffery Henson Sr. filed a complaint against defendant, the Macon County Jail, alleging that the defendant caused him to lose over $500 in personal belongings when he was transferred from the defendant's custody to another jail and was not allowed to take these items with him. He now appeals from the circuit court's order granting the defendant's motion to dismiss his complaint.

¶ 3                                    BACKGROUND

¶ 4    On June 14, 2022, Henson filed a small claims complaint against the defendant seeking damages in the amount of $500. He alleged that he was incarcerated there on federal charges from

1

approximately August 2020 to mid-January 2021, during which time he filed "over 50 grievances, and 50 Freedom of Information [Act] requests." He further alleged that, in retaliation for his exercising his "administrative rights," the jail administration requested his transfer to another facility. Henson claimed that his subsequent transfer, which was done without any warning or time for him to prepare, caused him to lose over $500 in clothes, personal hygiene items, stationery, food, and drinks that he was not permitted to take with him.

¶ 5    After filing his complaint, Henson sent two communications to the court, both of which included a request that the court issue an "order of remote appearance" to allow him to appear remotely for all hearings at which his attendance was required. Henson was incarcerated in Arkansas at the time. On October 21, 2022, the circuit court entered a docket order stating, *inter alia*, that the court construed this request as one to participate remotely pursuant to Illinois Supreme Court Rule 45, which covered all nontestimonial court appearances. The court included instructions for Henson to contact the court clerk and schedule a first appearance date at which he could appear remotely; he would be responsible for scheduling all subsequent remote appearances. Shortly after the court's order, Henson sent correspondence to the court clerk requesting his remote attendance at the next hearing.

¶ 6    On December 19, 2022, Henson filed a "Motion for Leave of Court to File Motion for Summary Judgment," restating the allegations in his complaint. The court set a hearing date of January 26, 2023, which Henson did not attend. In a docket entry from that date, the court reset the hearing for April 20, 2023, noting that Henson appeared to be incarcerated out of state, and could attend the hearing remotely via Zoom. The court stated that if he were unable to do so he must file a motion to reschedule to a date and time when his remote appearance could be facilitated.

The court further instructed that Henson would be responsible for arranging a new court date if he had to reschedule.

¶ 7    On March 8, 2023, the defendant filed a motion to dismiss Henson's complaint pursuant to section 2-619(a)(5) of the Code of Civil Procedure (735 ILCS 5/2-619(a)(5) (West 2022)). In its motion, the defendant noted that while Henson did not state a cause of action in his complaint, his allegations described the common-law tort of conversion. The defendant argued that the applicable statute of limitations for tort claims against a government entity was one year, pursuant to the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/8-101 (West 2022)). Henson contended that he was transferred out of the Macon County Jail in "mid-January of 2021," which is when the alleged tort occurred. His complaint, filed in June of 2022, was therefore time-barred.

¶ 8    In response, Henson disputed that his claim was one of conversion. Rather, he argued that it was a deprivation of property claim involving a violation of his fourteenth amendment due process rights. U.S. Const., amend. XIV. He alleged that a prisoner "unlawfully deprived of property may bring a procedural due process claim against the government," and that the due process clause was "implicated if a property deprivation occurred as a result of 'an affirmatively established or *de facto* policy, procedure, or custom, which the state has the power to control.' [Citation.]"

¶ 9    Henson also filed another motion, entitled "Motion for Order to Produce Plaintiff by Remote Appearance," alleging that because he was incarcerated, he required a specific order from the court to allow him to appear remotely. Henson was absent from the April 20, 2023, hearing, at which the court noted that there had apparently been an issue with his ability to attend remotely. The court entered a docket order, listing the three outstanding motions—Henson's motion for leave

3

to file a motion for summary judgment, the defendant's motion to dismiss, and Henson's motion for an order to produce his remote appearance—and explaining that it would first address the motion to dismiss, as it raised a statute of limitations argument.

¶ 10 The court also wrote that, pursuant to local rule 2.1(c) (6th Judicial Cir. Ct. R. 2.1(c) (Nov. 6, 2014)), allowing oral arguments on motions was at the discretion of the court, and a judge may choose to decide a motion without hearing oral argument. It noted that Henson had filed a response to the defendant's motion to dismiss, and granted the defendant leave to file a reply. The court then stated, "At the court's discretion, no oral arguments will be heard and the court will rule on the Motion to Dismiss within 28 days."

¶ 11 The circuit court granted the defendant's motion to dismiss on June 2, 2023. In its written order, the court found that it was "reasonable to construe" Henson's cause of action as conversion based on the facts alleged in his complaint. The court ruled that his complaint was therefore subject to the one-year limitations period set forth in section 8-101 of the Tort Immunity Act. As Henson was aware of the defendant's alleged wrongful withholding of his personal property when the incident occurred, the court found that the statutory limitations period began to run in mid-January of 2021, and would have expired in mid-January of 2022. Henson filed his complaint approximately five months after the limitations period expired.

¶ 12 The court also addressed Henson's argument that his cause of action was not conversion, but a procedural due process violation. It first noted that Henson did not dispute the approximate date on which his cause of action accrued. The court then found that Henson failed to articulate the elements of a procedural due process claim, or the statutory limitations period that he believed applied to his claim. The court further explained that while it had construed Henson's claim as sounding in tort, even if he had asserted a different type of civil claim against the defendant, the

4

same one-year limitations period would apply under the plain language of section 8-101 of the Tort Immunity Act.

¶ 13    This appeal followed.

¶ 14                              ANALYSIS

¶ 15    On appeal, Henson argues that the circuit court erred in construing the cause of action pled in his complaint as conversion rather than a procedural due process violation based on a deprivation of property. Due to this alleged error, he adds, the court should not have applied the one-year statute of limitations provided in the Tort Immunity Act, but "the appropriate limitations period for a procedural due process claim." He also argues that the circuit court violated his due process rights by denying his request to appear remotely at the hearing on the motion to dismiss and deprived him of a "meaningful opportunity to be heard" by not allowing oral argument on the motion.

¶ 16            A. Deprivation of Opportunity to Appear Remotely and Be Heard

¶ 17    Regarding the latter points, Henson is mistaken in alleging that he was denied access to court proceedings and denied the opportunity to challenge the defendant's argument in its motion to dismiss. First, the record shows that the circuit court granted Henson's request to appear remotely in its October 21, 2022, docket entry, and instructed him on how to arrange such an appearance. The court was also clear that it was Henson's responsibility to arrange his own remote attendance. When he did not appear at the April 20, 2023, status hearing, the court acknowledged both at the hearing and in its docket entry from that date that there was an issue with his ability to appear remotely due to his incarceration.

¶ 18    However, Henson had filed a response to the motion to dismiss and was not obstructed in any way from challenging all of the defendant's arguments in that response. Pursuant to the court's

5

local rules, it had discretion to decide the motion without hearing oral argument. See 6th Judicial Cir. Ct. R. 2.1(c) (Nov. 6, 2014). Furthermore, Henson alleges that he was prejudiced by the court's declining to hear oral argument on the motion to dismiss but does not explain what else he intended to state in support of his position, that he was unable to include in his written response.

¶ 19                    B. Henson's Cause of Action

¶ 20    We next address Henson's argument that the circuit court erred in treating his complaint as pleading conversion rather than a violation of procedural due process. Illinois is a fact-pleading jurisdiction, and a plaintiff is "required to set forth a legally recognized claim and plead facts in support of each element that bring the claim within the cause of action alleged." *Rodriguez v. Illinois Prisoner Review Board*, 376 Ill. App. 3d 429, 434 (2007). A small claims complaint is to be liberally construed; the complaint is sufficient where it clearly notifies the defendant of the nature of the claim. *Porter v. Urbana-Champaign Sanitary District*, 237 Ill. App. 3d 296, 300 (1992).

¶ 21    Despite the leniency of small claims proceedings, we presume that *pro se* litigants have full knowledge of the applicable court rules and must comply with all rules and procedures to the same extent required of litigants represented by counsel; we do not apply a more lenient standard for *pro se* litigants. *Holzrichter v. Yorath*, 2013 IL App (1st) 110287, ¶ 78. A court "will not fill in the blanks in a *pro se* complaint." *Rodriguez*, 376 Ill. App. 3d at 434.

¶ 22    Henson's complaint did not specify any cause of action. The core of his claim was that the defendant retaliated against him for filing repeated grievances and requests under the Freedom of Information Act by transferring him to a different facility "without warning or preparation"; in that process, he lost approximately $500 in clothes, personal hygiene items, stationary, food, and drinks that he was not permitted to take with him. It was only in response to the defendant's motion to

dismiss that he first labeled his cause of action as a procedural due process violation. The circuit court disagreed and found the complaint to sound in the tort of conversion.

¶ 23    In arriving at this finding, the court adopted the liberal standard afforded to small claims complaints and applied the elements of a conversion claim to the facts pled. To prove conversion, a plaintiff must establish that "(1) he has a right to the property; (2) he has an absolute and unconditional right to the immediate possession of the property; (3) he made a demand for possession; and (4) the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property." *Cirrincione v. Johnson*, 184 Ill. 2d 109, 114 (1998). The court also noted that it could rule out the possibility of a claim based on contract, as Henson did not allege the existence of a contractual relationship.

¶ 24    We find that the court did not err in construing Henson's cause of action as conversion. Henson did not plead sufficient facts to allow the court to construe his claim as alleging a procedural due process violation, nor does the term "due process violation" appear in his complaint. Even a liberal construction of the complaint does not entitle Henson to having the court read into the pleadings facts that simply are not there. See *Rodriguez*, 376 Ill. App. 3d at 434. After the defendant filed its motion to dismiss, in which it argued that his complaint sounded in tort, Henson made no effort to amend his complaint to properly plead a due process violation, if this was his intention.

¶ 25    Henson now argues that the due process violation was the deprivation of his property without adequate procedural safeguards. The fourteenth amendment "protects against the deprivation of life, liberty, or property without due process of law." *Chicago Teachers Union, Local No. 1 v. Board of Education of City of Chicago*, 2012 IL 112566, ¶ 12; U.S. Const., amend. XIV. However, it does not create property interests—rather, it protects interests "that a person has

already acquired in specific benefits." *Board of Education of City of Chicago*, 2012 IL 112566, ¶ 12. As our supreme court explained:

> "[T]he federal Constitution does not create property interests. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits. [Citation.] Therefore, the starting point in any procedural due process analysis is a determination of whether one of those protectable interests is present, for if there is not, no process is due. [Citation.]" (Internal quotation marks omitted.) *Id.*

¶ 26 Additionally, procedural due process safeguards "are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property." *East St. Louis Federation of Teachers, Local 1220, American Federation of Teachers, AFL-CIO v. East St. Louis School District No. 189 Financial Oversight Panel*, 178 Ill. 2d 399, 415 (1997). After answering the threshold question of whether there existed a liberty or property interest that had been interfered with by the State, a court conducting a procedural due process analysis next "examines the risk of an erroneous deprivation of such an interest through the procedures already in place, while considering the value of additional safeguards." *Id.*

¶ 27 Here, Henson pled that he was deprived of his property in the form of personal items totaling approximately $500 when he was transferred to a different facility. He does not allege any basis for why he was entitled to keep these items with him upon being transferred, or what procedural safeguards he was due as an inmate in federal custody being transferred to a different jail. To summarize, Henson merely pled that the defendant jail did not allow him to take his personal items with him when he was transferred. Without anything addressing any elements of a procedural due process claim, the complaint did not sufficiently notify the defendant that Henson was bringing a due process claim. See *Porter*, 237 Ill. App. 3d at 300. The circuit court therefore did not err in construing his complaint as sounding in the tort of conversion.

¶ 28                              C. The Applicable Statute of Limitations

¶ 29    Having found that Henson brought a tort claim against the jail, we turn to his remaining issue on appeal—whether the court erroneously dismissed his complaint as time-barred by applying the one-year limitations period pursuant to section 8-101 of the Tort Immunity Act. This section provides in relevant part:

> "(a) No civil action other than an action described in subsection (b) may be commenced in any court against a local entity or any of its employees for any injury unless it is commenced within one year from the date that the injury was received or the cause of action accrued." 745 ILCS 10/8-101(a) (West 2022).

¶ 30    Any tort action brought against a local government entity must be brought within the one-year limitations period in section 8-101 of the Tort Immunity Act. *Paszkowski v. Metropolitan Water Reclamation District of Greater Chicago*, 213 Ill. 2d 1, 4 (2004). Here, it is undisputed that the alleged injury occurred sometime in mid-January of 2021, when Henson was transferred without his personal items. Henson does not claim that the existence of his cause of action was concealed from him or not discoverable for any amount of time after the transfer occurred, and there is no argument for us to review regarding the possibility of the limitations period being tolled.

¶ 31    Henson filed his complaint on June 14, 2022, approximately one year and five months after the alleged injury occurred. Therefore, his complaint was untimely, and the circuit court properly dismissed it for that reason.

¶ 32                                         CONCLUSION

¶ 33    For the foregoing reasons, we affirm the order of the circuit court granting the defendant's motion and dismissing Henson's complaint with prejudice.


¶ 34    Affirmed.

9